UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHARLES ANTHONY LOUIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-15-893-SLP |
| | ) | |
| HECTOR RIOS et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Charles Anthony Louie, a state prisoner appearing pro se, brings this action under 42 U.S.C. § 1983. Pursuant to a referral from United States District Judge Scott L. Palk, this matter is now before the undersigned Magistrate Judge for proceedings in accordance with 28 U.S.C. § 636. The undersigned recommends that summary judgment be granted in favor of Defendants on Plaintiff's remaining federal claim and that the Court decline to exercise supplemental jurisdiction over any remaining state claims.

### BACKGROUND

Plaintiff's lawsuit arises out of events occurring during Plaintiff's incarceration at Lawton Correctional Facility ("LCF"), which is a private prison owned and operated by GEO Group, Inc. pursuant to a contract with the Oklahoma Department of Corrections ("ODOC"). *See* Am. Compl. (Doc. No. 11) at 1; Defs.' Second Mot. Summ. J. (Doc. No. 135) at 2.[1] In the remaining count of his Amended Complaint, Plaintiff asserts violations

---

[1] References to filings use the page and exhibit numbers assigned by the Court's CM/ECF system.

of the Fourteenth Amendment and of Oklahoma state law, alleging that during an "institutional shakedown" Defendants deprived him of legal materials and personal property without due process or opportunity to appeal.  Am. Compl. at 2, 4; Am. Compl. Ex. 1 (Doc. No. 11-1) at 1-4; *see also* Order of Sept. 13, 2016 (Doc. No. 68); Order of Mar. 31, 2017 (Doc. No. 70).  These claims are asserted against the eleven remaining Defendants: Hector Rios, Lakeyah Newson, Walker, Thomas-Cruz, Robert Jones, Eykamp, Sheryl Clark, Debbie Johns, Lt. Cantwell, Billy Gibson, and Brittany Holmstrom. *See* Defs.' Second Mot. Summ. J. at 2-3.  These Defendants, all of whom are or were employed by LCF, have filed a Second Motion for Summary Judgment (Doc. No. 135), to which Plaintiff has responded (Doc. No. 149).  In addition, Defendants have filed a Special Report ("S.R." (Doc. No. 49)) in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978).

## I.    *Defendants' Second Motion for Summary Judgment*

Defendants seek summary judgment on Plaintiff's federal claim on several grounds. *See* Defs.' Second Mot. Summ. J. at 1-9.

### A.  *Standard of Review*

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party.

*Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). While the Court construes a pro se litigant's pleadings liberally, all parties must adhere to applicable procedural rules. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).

In assessing Defendants' Motion, the undersigned has treated factual allegations in both parties' submissions as affidavit or declaration evidence for summary-judgment purposes to the extent that the statements therein are sworn, or dated and subscribed "as true under penalty of perjury" (e.g., Plaintiff's Amended Complaint, Response, and Statement of Disputed Factual Issues (Doc. No. 149-2)), and are "made on personal

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); 28 U.S.C. § 1746; *see Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

### B.  Plaintiff's Federal Claim

In his federal claim, Plaintiff alleges that on August 20, 2013, his cell at LCF was searched as part of a shakedown conducted by prison officials.  *See* Am. Compl. at 2, 4. According to Plaintiff, certain Defendants purposely discarded various items from Plaintiff's cell, thereby depriving him of his property without due process.  *See id.*

### 1.  The Relevant Facts

The relevant factual record[2] reflects the following as regarding Plaintiff's federal claim.  Pursuant to ODOC and LCF policies, each prisoner at LCF was allowed a maximum of one cubic foot in which to store legal materials, one cubic foot in which to store other materials, and one cubic foot in which to store arts-and-crafts materials.  OP-030120 § IX(B), (C), (D) (eff. Mar. 12, 2013);[3] LCF Policy and Procedure Manual § VIII(B)(3), (C)(1), (D)(2) (Defs.' Second Mot. Summ. J. Ex. 3 (Doc. No. 135-3)).  ODOC policy

---

[2] All material facts relied upon in this Report and Recommendation are uncontroverted, deemed admitted, or, where genuinely disputed, identified as such and viewed in the light most favorable to Plaintiff.

[3] Despite being specifically advised as to the necessity of supplying the correct version of prison policies, Defendants attached to their Motion an excerpt of a version of OP-030120 that did not take effect until nearly a year after the relevant events transpired.  *See* R. & R. of Mar. 9, 2017 (Doc. No. 69) at 5 n.2; Defs.' Second Mot. Summ. J. Ex. 2 (Doc. No. 135-2).  The undersigned has instead relied upon a publicly available version of the policy that was in effect on August 20, 2013.  *See* R. & R. of Mar. 9, 2017, at 5 n.2.

prescribes that "[i]nmates will be allowed to dispose of their own excess or unauthorized personal property, excluding contraband," pursuant to certain prescribed methods. OP-030120 § VI(A)(2).

On August 20, 2013, LCF officials conducted a preannounced shakedown that included a search of Plaintiff's cell. Am. Compl. at 2, 4; Pl.'s Resp. at 2; *see also* Defs.' Second Mot. Summ. J. at 3; Pl.'s Br. Ex. 5 (Doc. No. 60-5) at 1, 2. Plaintiff at that time possessed materials in excess of the facility's one-cubic-foot allotments for at least one of the three categories of materials. Defs.' Second Mot. Summ. J. at 3; *id.* Ex. 4, Pl. Dep. 21:13-26:20 (Doc. No. 135-4); Pl.'s Resp. at 6. During the course of that search, certain Defendants intentionally discarded items that belonged to Plaintiff by placing them into the garbage. Am. Compl. at 4; Pl.'s Resp. at 2-4. Plaintiff alleges that these items included: personal correspondence and genealogy papers; legal materials; arts-and-craft materials; receipts; and pay stubs. *See* Am. Compl. at 2, 4; Pl.'s Resp. at 3-4; Pl.'s Resp. Ex. 1 (Doc. No. 149-1) at 2, 4; Am. Compl. Ex. 1, at 2. The Defendants present at the scene ignored Plaintiff's pleas for them to stop discarding the items. Pl.'s Resp. at 3-4. Plaintiff's requests for a "confiscation sheet" to catalog the items being thrown out were likewise denied by certain Defendants. Pl.'s Resp. at 3, 4.

### 2. *Discussion*

Citing *Hudson v. Palmer*, 468 U.S. 517 (1984), Defendants argue that Plaintiff cannot show that he was deprived of his property in a manner that lacked the requisite due process. *See* Defs.' Second Mot. Summ. J. at 5. In *Hudson*, as here, a state prisoner argued that during a shakedown of his cell, a prison official "intentionally destroyed certain of his

5

personal property." *Hudson*, 468 U.S. at 530. The prisoner argued that this destruction deprived him of his property without due process and violated the Fourteenth Amendment. *See id.* The Supreme Court disagreed, holding that such destruction was "random and unauthorized," that the relevant state provided an adequate postdeprivation remedy, and that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Id.* at 533, 534-35.

The shakedown and intentional deprivation that transpired in Plaintiff's LCF cell on August 20, 2013, largely resemble those described in *Hudson*. Thus, two questions arise: (1) did Plaintiff have an adequate postdeprivation remedy under Oklahoma law; and (2) does the alleged deprivation at LCF constitute the type of "random and unauthorized" deprivation for which predeprivation procedural safeguards would be impracticable? *Id.*

As to the first question—whether Oklahoma law provided Plaintiff an adequate postdeprivation remedy—Plaintiff broadly states, without legal citation or factual explanation, that he was "without any post-deprivation remedy." Pl.'s Resp. Ex. 1, at 3. Courts have found the availability of a suit in tort to be an adequate postdeprivation remedy. *See, e.g.*, *Hudson*, 468 U.S. at 534-35; *see also Arnold v. Cornell Cos., Inc.*, No. CIV-07-1431-F, 2008 WL 4816507, at *1-2 (W.D. Okla. Oct. 29, 2008) (finding that private-prison operator was not entitled to immunity under Oklahoma's Governmental Tort Claims Act ("OGTCA"), Okla. Stat. tit. 51, §§ 151 et seq., from civil negligence claim); Okla. Stat. tit. 51, §§ 152(11), 152(13), 155(25); *cf. Cook v. Silvers*, Nos. 93-5016, -5033, 1994 WL

62825, at *2 (10th Cir. Feb. 23, 1994) (citing tort claim under OGTCA as an example of a prisoner's postdeprivation remedy); *Smith v. Bauman*, No. CIV-09-926-R, 2009 WL 3271329, at *3 (W.D. Okla. Oct. 9, 2009) (same).  This Court also has cited a state-law claim of conversion as an adequate postdeprivation remedy available to Oklahoma inmates who alleged that their personal property was lost or taken.  *See, e.g.*, *Smith*, 2009 WL 3271329, at *3 (citing *Steenbergen v. First Fed. Sav. & Loan of Chickasha*, 753 P.2d 1330 (Okla. 1987)); *Rivera v. Garfield Cty. Sheriff's Dep't*, No. CIV-15-1299-M, 2015 WL 10015375, at *6 (W.D. Okla. Dec. 14, 2015).[4]   These authorities reflect that a postdeprivation remedy was available to Plaintiff.[5]

As to the second question—whether the alleged deprivation at LCF constitutes the type of "random and unauthorized" deprivation for which predeprivation procedural safeguards would be impracticable—Plaintiff nominally argues that it does not, implying that because the deprivation occurred in connection with a planned search, the deprivation

---

[4] In addition, Plaintiff may have "a further post-deprivation remedy in the form of a replevin action based on contract in the Oklahoma state courts." *Peterson v. Lampert*, 499 F. App'x 782, 785 n.2 (10th Cir. 2012); *accord Buchanan v. Oklahoma*, 398 F. App'x 339, 342 (10th Cir. 2010).  *But see* Okla. Stat. tit. 57, § 566.4(B)(1) (prescribing that neither "any private correctional company" nor its "employees" "shall be liable for any civil claim or action alleged to have arisen from any theory of contract law"); *Churn v. Ward*, No. CIV-03-449-M (W.D. Okla. Apr. 5, 2004) (order) (holding that a prior version of section 566.4(B)(1) precluded contract claims "against the State of Oklahoma, any correctional institution located in Oklahoma, or any officer or employee thereof" and that "Oklahoma prisoners are now without an adequate state post-deprivation remedy for the alleged unlawful seizure of their personal property"), *aff'd*, 121 F. App'x 363 (10th Cir. 2005).

[5] Notably, Plaintiff alleges that he took steps to bring a state-law tort claim against Defendants.  *See* Am. Compl. Ex. 2, at 4; Pl.'s Br. (Doc. No. 60) at 9; Pl.'s Br. Ex. 23 (Doc. No. 60-23) at 1; *id.* Ex. 24 (Doc. No. 60-24) at 1-14.

was not random or unauthorized. *See* Pl.'s Statement of Disputed Factual Issues at 1. However, the Supreme Court has explained that planning a cell search does not equate to planning an intentional destruction of property during the search:

> In *Hudson*, the errant employee himself could anticipate the deprivation since he intended to effect it, but the State still was not in a position to provide predeprivation process, since it could not anticipate or control such random and unauthorized intentional conduct. Again, a rule forbidding a prison guard to maliciously destroy a prisoner's property would not have done any good; it would be absurd to suggest that the State hold a hearing to determine whether a guard should engage in such conduct.

*Zinermon v. Burch*, 494 U.S. 113, 137 (1990) (citation omitted); *see also id.* at 136 ("[I]n *Hudson*, the State might be able to predict that guards occasionally will harass or prosecute prisoners they dislike, but [the State] cannot know when such deprivations will occur." (internal quotation marks omitted)); *Tennyson v. Carpenter*, 558 F. App'x 813, 822 (10th Cir. 2014) (affirming dismissal of prisoner's procedural due process claim as legally frivolous where prisoner had an adequate postdeprivation remedy and stating that allegations that a prison was aware of an official's previously engaging in similar conduct "d[id] not establish the practicality of affording [the prisoner] a pre-deprivation hearing before [the official] allegedly removed [the prisoner's] photographs"). The summary judgment record suggests no question of fact that, if resolved in Plaintiff's favor, would show that the destruction of Plaintiff's property was or should have been anticipated. Rather, the undisputed material facts reflect that the Defendants who intentionally destroyed Plaintiff's property at the cell search (i.e., Defendants Newson, Walker, Thomas-Cruz, and Eykamp) "had no . . . broad authority to deprive prisoners of their personal property" and no duty "to initiate . . . the procedural safeguards required before

8

deprivations occur." *Zinermon*, 494 U.S. at 138; *see* Am. Compl. at 2, 3; OP-030120 § VI(A)(2); Defs.' Second Mot. Summ. J. Ex. 5, Pl. Dep. 32:13-17 (Doc. No. 135-5).

For all of these reasons, Plaintiff cannot show that he was deprived of due process under the Fourteenth Amendment by the intentional destruction of his personal property on August 20, 2013. Defendants are entitled to summary judgment on this claim. *See Hudson*, 468 U.S. at 536; Fed. R. Civ. P. 56(a).

## II.    *Plaintiff's State-Law Claim*

Plaintiff also asserts that Defendants' conduct of August 20, 2013, violated Oklahoma state law. *See* Am. Compl. at 4 (citing Okla. Const. art. II, § 7). Because Defendants are entitled to summary judgment on Plaintiff's remaining federal claim, and Plaintiff has not alleged or established diversity of citizenship within the meaning of 28 U.S.C. § 1332, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claim. *See* 28 U.S.C. §§ 1331, 1367(c)(3); *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Defendants' Second Motion for Summary Judgment (Doc. No. 135) be GRANTED. The undersigned further recommends that the Court decline to exercise supplemental jurisdiction over Plaintiff's state-law claim.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 20, 2018, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.  The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the present case.

ENTERED this 29th day of June, 2018.

_____

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE

10